## HAVENS *v.* HAVENS and others.

Where a *testator devised to his wife for life,* the house and lot where he resided, and gave to her various specific legacies which were large in proportion to his whole property, it was *held* that these gifts were not inconsistent with her claim of dower in the residue of his real estate which was devised to his brother and sisters, or in that of which he died intestate; and that she should not be put to her election between her dower and the provisions made for her by the will.

The testator bequeathed to his wife his stock in an insurance company which lost *its capital stock in the course of its business,* after the making of the will; and on its stock being again filled, the testator paid up a part only of his shares, and retained them till his death. *Held* that as to such part of the stock, the legacy was not adeemed.

The testator devised two lots with the buildings to his brother, in satisfaction of the latter's claims upon him. After the date of the will, and before his death, he erected buildings on the two lots, which nearly doubled their value. He also reduced the amount of his debt to his brother. *Held* that these acts were not a revocation of the devise.

A *bequest* of all the residue of his " *estate,*" was held, under the circumstances, not to pass real estate acquired after the making of the will.

The residue was given to the " *pecuniary and specific legatees.*" *Held* that *devisees* were not included in the description.

June 22, and Dec. 18, 26, 1843 ; Feb. 26, 1844.

THE bill was filed by Jonathan Havens, one of the executors of Gabriel Havens, late of the city of New-York, who died on the 7th of April, 1839, to obtain a construction of his will, and a decree for the sale of his real estate.

The last will and testament of Gabriel Havens, dated August 13, 1830, was as follows :

"I bequeath to my wife Cynthia all my household furniture, plate, wearing apparel, family stores and articles used in housekeeping; also I bequeath to her the income of seven thousand two hundred dollars of the stock of the Bank of the United States, during her life ; and in case the income of this stock, or the funds into which it may be converted shall not yield six per cent. per annum, so much of the principal shall be sold or encroached on from time to time as shall render this income not less than six per cent. upon the said amount ; and upon her decease, I bequeath the principal of the above stock, or the funds into which it may be changed, to my brother John T. Havens, if then living, and to his children if then he shall not be living ; also unto her I bequeath the income of two thousand five hundred dollars Utica Bank stock, and in case of a change of such stock, the interest of the proceeds thereof; and on her decease, I bequeath the principal unto John T. Havens, if then living, and if not, then to his children. Also I devise and bequeath unto my said wife Cynthia, for her life, the house, store and lot known as No. 159 William-street, where I now reside; and from and after her decease, I devise the same to the said John T. Havens, my brother, and to his heirs and assigns for ever.

Item. Unto my brother-in-law, Jabez Munsell, I bequeath the income of six thousand five hundred dollars stock in the Bank of America, and the interest of the proceeds of the said stock, if it shall be changed during his life, and upon his death I bequeath the principal to his children surviving him.

Item. Unto my sisters Jennet and Harriet, I devise all my estate right and interest in the land which belonged to my father, to have and to hold the same to them and the survivor of them for life, and from the death of the survivor I devise the same to my brother John T. Havens, and his heirs for ever ; meaning this as an acknowledgment of his attentions to them.

Also, I devise unto John T. Havens the house and lot in Water-street, and the store in Front-street, belonging to me, but in satisfaction and full discharge of all his claims upon me. I bequeath unto Jonathan H. Munsell, fifteen hundred dollars ; to Henry Munsell, fifteen hundred dollars ; to Caroline Sherry, five hundred dollars, and I recommend her to the care and kindness of my wife; to Mrs. Maria Shaw, two hnndred and fifty dollars ; to Cynthia Vandervoort, two hundred and fifty dollars ; to Jane T. Havens, two hundred and fifty dollars ; to James C. Havens, two hundred and fifty dollars ; to Mary, Betsey and Sally, daughters of the widow Morrell, one hundred dollars each.

And all the rest, residue and remainder of my estate in case it shall more than suffice to pay the legacies herein above and herein after given, I bequeath unto the *above named* pecuniary and specific legatees severally and respectively to be apportioned among them according to the amounts of their respective legacies, and to be added as an increase thereof. I bequeath unto Mary Morrell the further sum of one hundred dollars, which I request her to apply to the use of such sabbath school or schools as she shall choose ; to the American Education Society, two hundred and fifty dollars ; to the Society for Promoting the Gospel among Seamen, and to the Orphan Asylum Society I bequeath so much as will fulfil the donations or bequests to them, or subscriptions for their benefit, respectively made or engaged by my deceased brother Philetus ; to the Marine Society, two hundred dollars, to be paid six months after my decease. And should any of the bequests for the benefit of any of the above named religious or charitable institutions fail to take effect through any informality, mistake or accident, I bequeath the legacy intended to be given, to my executors, or executrix, requesting them to dispose of the money according to what they shall judge my intention to have been, without their being accountable to any one in this behalf.

I appoint my wife Cynthia Havens executrix, and my friends Daniel Lord junior and Jonathan Havens executors to this will, and I direct that in case any of the stock above mentioned shall be paid off or changed from any good cause, (which they are

authorized to effect) the principal shall be invested by them either in stock of the United States, or some of the States, or in bonds secured by mortgage of real estate. And I give them discretion to make any amicable compositions or settlements relating to any of my affairs to avoid law suits.

Furthermore I bequeath to my wife Cynthia my stock in the Firemens Insurance Company. I direct the interest or annuity which is now payable in respect to my house in William-street, to be paid or secured out of my personal estate, which I charge it upon."

Mr. Lord renounced the executorship, and the will was proven by Jonathan and Cynthia Havens.

After the will and before his death, the testator laid out about $10,000 in buildings on the property which he had devised to John T. Havens. At the date of the will, this property was worth $12,000, and at his death it was worth $20,000. And intermediate the making of his will and his death, he reduced his debt to John T. Havens from $6,500, as it was at the former period, to $5,000.

After the will was executed, the testator purchased a dwelling-house and lot of ground at Sag Harbor; and one question was whether this passed under the residuary clause in the will.

By the great fire in December, 1835, the stock of the Firemens Insurance Company was rendered worthless, the whole capital stock of the company being required to pay the losses which it incurred. The testator then owned one hundred shares of the stock. This Company, with many others in the same situation, was authorized to call upon its stockholders to fill up its capital stock, by the act for the benefit of certain insolvent insurance companies in the city of New-York, passed in January, 1836. (Laws of 1836, chap. 24, page 26.) The testator filled up 40 shares of his stock, and suffered the remainder to be issued to others pursuant to the provisions of the act. He owned the 40 shares at the time of his death.

John T. Havens, the testator's brother, died soon after the death of the testator, leaving three children and heirs, viz: the complainant, Frances M. Havens, and Mrs. Sackett.

The defendants in the suit, were the widow, legatees, heirs

and next of kin of the testator, and the other children of John T. Havens.

*D. P. Hall*, for the complainant.

*A. H. Dana*, for Sackett and wife.

*A. L. Robertson*, for Cynthia Havens and various other legatees.

THE ASSISTANT VICE-CHANCELLOR.—Several important questions are presented by the claims of Mrs. Havens, the widow of the testator.

And *first*, in reference to her dower. It is contended by the other parties, that she is put to an election between her dower and the provisions under the will. That the intention of the testator is manifest from the whole will, that she should not take dower in his estate and that several of his express objects and intents will be defeated by allowing to her, dower in addition to the special gifts made to her.

It is agreed that there is no express declaration in the will, that the provisions for the widow, shall be in lieu of dower. In order to defeat her right, this intent is to be implied.

Chancellor Kent states the rule on this subject, in these words. "The testamentary provision in lieu of dower, in order to render it such, even with the widow's acceptance of it, must be declared in express terms, to be given in lieu of dower ; or that intention must be deduced by clear and manifest implication from the will, founded on the fact that the claim of dower would be inconsistent with the will, or so repugnant to its dispositions as to disturb and defeat them." *Adsit* v. *Adsit*, (2 J. C. R. 448 ;) 4 Kent's Comm. 58, 2d ed.

And Chancellor Walworth says, in *Sandford* v. *Jackson*, decided May 2, 1843, and not yet reported, (*a*) " To bar the widow by implication where the testator has not declared his

(*a*) Since reported in 10 Paige's R. 266.

intention on the subject by his will, the provisions of the will, or some of them, must be absolutely inconsistent with her claim of dower, so that the intention of the testator will be defeated as to some part of the property devised or bequeathed to others, if she takes her dower, as well as the provisions made for her in the will."

Let us now examine the objections made to Mrs. Havens' dower.

1. The house and lot in William-street, where the testator resided, were devised to her for life. This of course excludes any dower interest in that property. But of itself, it furnishes no argument against the existence of the right in other real estate of the testator. *Birmingham* v. *Kirwan,* (2 Schoales and Lefroy, 444,) was a similar case, where the widow took her dower in the remaining real estate. And a like case, where there was a stronger implication against the widow, is *Holdich* v. *Holdich,* (2 Younge and Collyer's New Cases, 18.)

2. The specific provisions made for her by the will, exceed the value of her dower right; in fact, it was said, they amount to nearly one half of the whole estate.

This to my mind, furnishes no reason whatever, for implying that the testator intended to bar her dower. It is not what the court or the counsel would do, in like circumstances, that is to ascertain what the testator has done or intended to do. In this instance, it would have excited no great surprise, if the testator had given the whole of his property to his wife. He left no children, and she was the only near and immediate object of his bounty. Because he devised to her these specific portions of his estate, I cannot infer that he designed to deprive her of the provision which the law gave her by right of her marriage.

The same argument, from the liberal provisions made for the wife by the will, was urged in *Fuller* v. *Yates,* (8 Paige's R. 325,) and was overruled by the Chancellor.

In *Sandford* v. *Jackson,* before cited, the testator devised his whole estate real and personal, for the use and support of his wife so long as she remained his widow, and until his daughter Sophia should become of age, and then that his property both

real and personal, should be equally divided among his children who were named in the will. Sophia was only six months old at the death of the testator. The widow married again soon after his death, and continued in the exclusive use of the estate until Sophia became of age. The heirs contended that the devise was in lieu of dower, and that having elected to take under the will, her dower was barred. Vice-Chancellor Gridley, (of the Fifth Circuit,) decided that the widow was entitled to dower after Sophia attained her majority, and the Chancellor on appeal, affirmed his decision.

The implication against the claim of the widow, was in that case, vastly stronger than it is here. And the decision is directly contrary to that of Chancellor Vroom, in New-Jersey, in *Stark* v. *Hunton*, (1 Saxton's Ch. R. 216.) It is however a decisive authority in the case before me.

3. It urged that the claim of dower is inconsistent with the testator's devise to his sisters, and to his brother John T. Havens, and partially defeats those gifts.

The effect is, not to defeat the devises, but they must be taken, *cum onere*, subject to the right which the law vests in the widow. The same objection to dower, might be urged, with as much propriety, in every case where land is devised by a testator whose wife survives him. The widow's right is *pro tanto*, inconsistent with the perfect enjoyment of the devise. But that right is a legal claim, superior to the will, and which it will be presumed the testator knew would be paramount to any interest he could dispose of; and with this knowledge the inference is, that if he intended to exclude the legal right by another provision in her behalf, such intention would have been declared in the will.

Mrs. Havens is therefore entitled to her dower in the lands specifically devised by the testator.

In reference to the real estate not mentioned specifically in the will, there are two points which will be examined hereafter, and which, it is insisted, affect her dower in that estate, viz: whether it forms a part of the residue disposed of by the will; and if it does, then whether Mrs. Havens is to participate in its distribution as a residuary legatee or devisee.

I think, if both these propositions are established, she is still entitled 'to her dower in the remaining real estate. Suppose the testator died seised of a single house and lot, after devising it to be divided between his widow and his brothers and sisters. The widow would undeniably take her dower, and an equal interest with each of the other devisees, in the residue. So, if the devise had been of one-third to her for life, and the residue to the brothers and sisters, she would take her dower and the other third under the will. · The testator's interest in *the residue*, in this case, and in the house and lot in the case put, which he could give by his will, is *the property subject to the dower right.* Out of this property which he has, less the inchoate right of his wife to her dower, he can carve such interests as he pleases, and his wife is as competent to take one or more of such interests as devisee, as any other person.(*a*) *Second.* The claims of Mrs. Havens, in reference to the stock of the Bank of the United States, and of the Bank of Utica, were conceded at the hearing.

*Third.* The next litigated question, is upon the stock of the Firemens Insurance Company.

The testator, at the date of his will in 1830, had 100 shares of this stock, and still owned them at the passage of the act of January, 1836, enabling the insolvent insurance companies to fill up their capital. In 1836, he filled up 40 shares, and suffered the remainder to be issued to others, pursuant to the provisions of the act. He continued to own the 40 shares till his death.

If, as is contended, there was a revocation here, it must be placed on the ground of intention. But there is nothing from which to infer such an intention. The value of the stock was gone, and the testator's filling it up would rather argue a design to keep his bequest good. It is like the case in the old

(*a*) See on this subject, *Ellis* v. *Lewis,* (3 Hare's R. 310 ;) *Dowson* v. *Bell,* (1 Keen, 761 ;) *Harrison* v. *Harrison,* (1 ibid. 765 ;) *Reynard* v. *Spence,* (4 Beavan, 103 ;) *Holdich* v. *Holdich,* (2 Y. & C. Ch. Ca. 18 ;) *Hall* v. *Hill,* (1 Drury and War. 94.)

books, where the testator bequeaths a ship, and afterwards, by piecemeal, repairs or renews it, so that there remains little or nothing of the old matter or stuff; his will is not by this presumed to be changed, and it is deemed to be the same ship in law. (Swinb. on Wills, p. 7, § 20 ; Godolph. Orph. Leg. 401.) It is argued that this is not the same stock which the testator bequeathed. I think otherwise, and that it is identically the same to the extent of the 40 shares.

In *Partridge* v. *Partridge*, (Cases Temp. Talbot, 226,) the testator, by his will, gave £1000 of South Sea Stock to his wife. When he made his will, he had £1800 of that stock. He afterwards reduced it to £200, but after that, purchased so much as to make up the £200 to be £1600, and died in July, 1733. In June, 1733, by act of Parliament, three-fourths of the capital South Sea Stock was changed into annuities. Lord Talbot decided that there was no ademption of the £1000.

Under the most stringent rule ever held on the subject; viz : that the court is only to inquire whether the specific thing remained at the death of the testator ; this Firemens Insurance stock passes by the bequest in the will. See *Stanley* v. *Potter*, (2 Cox Ch. C. 180, per Lord Thurlow ;) *Barker* v. *Rayner*, (5 Madd. 208, per Sir John Leach.) And as to these cases, see *Ward on Legacies*, 24, 269.

I am satisfied that Mrs. Havens is entitled to the stock in question.

*Fourth.* In reference to her claim upon the residue, I will consider that, when upon the construction of the residuary bequest.

The devise of the property in Water-street and Front-street, to John T. Havens, next claims attention.

It is contended, that the acts of the testator in improving this property and reducing his debt, were a revocation of the devise to John T. Havens.

Here we are again to have recourse to the intention of the testator. Looking to what we may believe to have been his real intention, by the light of this evidence and the situation of his family, without reference to any fixed rules of law on the

subject; I am persuaded that he did not design to revoke this devise.

It was conceded at the hearing that the testator and his brother John, had made their property together as partners in trade, and had been associated in business for a great length of time. At the date of this will, there was an unsettled account between them, on which the testator was indebted to John in a sum not then ascertained. The account was not settled during his lifetime, but it is agreed that at the date of the will, the balance against the testator was $6,500.

In making his will, as was very natural and reasonable, his brother John appears to have been the principal object of his regard, after providing for his wife. We therefore find that after giving to her the life interest in the United States Bank, and Utica Bank stocks, and in the William-street property, he in each instance gives the whole remainder to John T. Havens. Then follows a bequest to his brother-in-law and his family. Next comes the devise of a life interest to the testator's two maiden sisters, in the land which belonged to his father, and the remainder in that he also gives to John in fee. Then comes the devise in question, and it is expressed to be in satisfaction and full discharge of John's claims on the testator. He gave to John real estate worth $12,000 in this clause, and as it is the last gift which he intends for his brother, and exceeding in amount (which no previous gift to him did,) any probable debt which John had against him, he declares that this devise shall be in satisfaction and full discharge of all John's claims.

The reduction of the balance by the subsequent dealings between them, is not under such circumstances evidence of an intention to revoke the devise, or any part of it. No one can doubt but that the testator would have given this property to his brother, if he had not owed a cent to the latter.

The laying out money upon the property, is no stronger evidence in this case, of a revocation. It is probable that this fact alone would not have been urged in support of a revocation. It can rarely occur in our ever changing community, that real estate devised, will after the lapse of nine years remain in the

same plight that it was when the will was executed. And any rule as to implied revocation, founded upon the greater or less degree of additions and improvements made to the estate, between the date of a will and the death of the testator, would be very uncertain and even dangerous. If the question were open to adjudication, I should say without hesitation, that the reduction of the debt, and the enhanced value of the estate by buildings upon it, after the making of the will, did not revoke the devise to John T. Havens.

The Revised Statutes appear to be decisive of this point. They provide, (2 R. S. 64, § 42,) that no will in writing, except in the cases thereinafter mentioned, nor any part thereof, shall be revoked or altered, otherwise than by some other will in writing, or some other writing of the testator declaring such revocation or alteration, and executed with the same formalities with which the will itself was required by law to be executed ; or unless such will be cancelled &c.

The succeeding sections of the Revised Statutes, mention various cases in which a will shall be deemed revoked in whole or in part; but there is no provision for revocation, in a case like the one before me.

It appears by the notes of the revisers accompanying these sections, that they intended to provide for all cases of implied revocation. (See 3 Rev. Stat. 2d ed., 631, 634.)

The next subject of inquiry is the disposition made of the residue and what property is embraced in it.

*First,* The will contains the words "all the rest, residue and remainder *of my estate,* in case it shall more than suffice to pay the legacies hereinabove and hereinafter given, I bequeath," &c.

It is conceded that the word " *estate* " is sufficient to include all property, real and personal, but the residue of the words used, it is argued, restrict the bequest to personalty.

The testator devised specifically, all the real estate which he had at the date of the will. When therefore he was speaking of the rest of his estate left after paying his legacies, he had in view personal estate only. It was out of that estate alone

that his legacies were to be paid, and this strengthens the conviction that the residuary bequest was limited to that species of property.

The will does not in express terms dispose of all the testator's real estate, nor are there terms in it which denote his intent to devise all his *real* property, within the meaning of the statute, (2 R. S. 57, § 5.)

In my judgment, the real estate acquired by the testator after the making of his will, did not pass under this residuary bequest, but descended to his heirs at law, subject to the dower of his widow.

*Second.* The bequest of the residue, is "to the above named pecuniary and specific legatees, severally and respectively to be apportioned among them, according to the amounts of their respective legacies, and to be added as an increase thereof."

This language is too plain to admit of any doubt upon its true construction. The testator has used throughout his will, not merely apt words, but technical words of devise and bequest, in reference to real and personal estate respectively. Here he gives the residue to his *pecuniary* and specific *legatees,* excluding *devisees ;* and as an increase of their *legacies,* not in addition to their *devises.* Neither the general scope of the will, nor the previous gifts, nor the situation of his family, furnish us any ground for supposing that he used this language erroneously. And as we have seen, the residuary fund itself, was *personalty,* and thus appropriately given to legatees as such.

Again, the residuary bequest is expressly limited to the legatees *above named.* This excludes all the legatees whose names do not appear in the will prior to the residuary clause.

Mrs. Havens is one of the *above named* legatees, and she takes not only in respect of her preceding specific and pecuniary legacies, but also in respect of the subsequent legacy of the Firemens Insurance stock. The *residue* is what is left after paying the legacies *herein above* and *hereinafter* given, and it is to be distributed among those *above named,* according to the amounts of their respective legacies, meaning as well their legacies after given, as those given before.

In ascertaining these "*amounts*," some of the parties claim that the stocks specifically bequeathed shall be estimated at their nominal or par value, as expressed in the will. This is not the proper rule, because as to part of those stocks, John T. Havens, or his children, are to take only whatever residuum there may be at the death of Mrs. Havens. The will speaks at and from the death of the testator, and in apportioning the residue, the value of the stocks at that period is to be taken ; and the worth of Mrs. Havens' interest in the bank stocks at that time, is to be estimated in making the apportionment.

There must be a decree accordingly.